**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
Mark@trtl.law
James M. Treglio (SBN 228077)
JimT@trtl.law
Cara Townsend (SBN 220356)
CaraT@trtl.law
Isabel Rose Masanque (SBN 292673)
IsabelM@trtl.law
Bree Durso (SBN 307198)
BreeDurso@trtl.law
1410 E Winding Way, Suite B
Friendswood, TX 77546
Tel: (415) 534-0530
Fax: (888) 422-5191

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA - FRESNO DIVISION

| | |
|---|---|
| ERIC TESTORI, an individual and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> NESTLE HEALTH SCIENCE US HOLDINGS, INC., a Delaware Corporation; and DOES 1 through 100, inclusive, <br><br> Defendants. | **CLASS ACTION** <br><br> **CLASS COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF (FOR VIOLATIONS OF:** <br><br> **(1) THE CONSUMER LEGAL REMEDIES ACT (Civil Code § 1750, et seq.,);** <br> **(2) THE FALSE ADVERTISING LAW (Business and Professions Code § 17500, et seq.,);** <br> **(3) FRAUD, DECEIT, AND/OR MISREPRESENTATION;** <br> **(4) CALIFORNIA UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code §17200, *et seq.*; and** <br> **(5) UNJUST ENRICHMENT.** <br><br> **DEMAND FOR JURY TRIAL** |

Class Action Complaint

Plaintiff Eric Testori ("Plaintiff"), individually and on behalf of classes of similarly situated individuals (defined below), brings this action against Nestle Health Science US Holdings, Inc. ("Nestle" and/or "Defendant") and Does 1 through 100 (collectively, "Defendants").

## INTRODUCTION

1.      Plaintiff, by and through counsel, brings this class action against Defendant to seek redress for its unlawful and deceptive practices in labeling and marketing the Carnation Breakfast Essentials Nutritional Drink Classic French Vanilla ("Product" and/or "Products"), which is prominently marketed as a "nutritional drink" and highlights its 10g of protein per serving, while concealing that the Product's first ingredients are water and glucose; meaning it is composed primarily of sugar and water, rather than protein.

2.      Consumers are increasingly health-conscious and, as a result, many consumers seek foods and beverages high in protein and low in added sugars. To capitalize on this trend, Defendant emphasizes the Product's protein content and positions it as "Breakfast Essentials," leading consumers to reasonably expect that the Product delivers balanced nutrition suitable as a breakfast replacement.

3.      In reality, the Product provides 10g of protein but also delivers 12g of sugar per serving — 24% of the recommended daily value for added sugars — making sugar one of its predominant ingredients. A product whose first two ingredients are water and glucose, and which delivers a higher concentration of sugar than protein, is not a nutritional "breakfast essential." Defendant's labeling and marketing are misleading because they exploit consumer interest in protein and health while downplaying the Product's true composition: a sweetened beverage primarily made of water and sugar.

4.      The Food and Drug Administration ("FDA") has recognized that added sugars are a nutrient of concern for public health, and therefore requires that manufacturers disclose added sugars and their percent daily value in the Nutrition Facts Panel. 21 C.F.R. § 101.9(c)(6)(iii). This regulation reflects two important realities: (a) sugar intake is material to consumer purchasing decisions, particularly when products are marketed as "nutritional" or "healthy," and (b) excessive consumption of added sugars contributes to obesity, diabetes, heart disease, and other chronic health conditions. Defendant's decision to market the Product as a "Breakfast Essential" while formulating it with more sugar than protein directly undermines FDA's purpose in mandating sugar disclosures.

Class Action Complaint

A consumer led to believe that this Product is a nutritious substitute for breakfast is misled when in fact nearly one-quarter of their daily recommended sugar intake is delivered in a single serving. By emphasizing protein while concealing sugar as the dominant ingredient, Defendant provides consumers with an incomplete and distorted picture of the Product's true nutritional value.

5.    The FDA requires manufacturers to disclose added sugars in the Nutrition Facts Panel ("NFP") and to state their contribution to the daily value ("%DV"). 21 C.F.R. § 101.9(c)(6)(iii). This mandate reflects the FDA's recognition that excessive added sugar consumption contributes to obesity, diabetes, cardiovascular disease, and other chronic conditions, and that clear disclosure is necessary for consumers to make informed dietary choices. The disclosure of added sugars in both absolute grams and %DV ensures that consumers understand whether a product marketed as "nutritional" or "essential" is, in fact, consistent with public health recommendations.

6.    Because consumers are generally unaware of how much added sugar is appropriate for daily consumption, FDA regulations require both the gram amount and %DV of added sugars to appear in the NFP. *Id*. This requirement prevents manufacturers from making front-label nutrient content claims—such as emphasizing protein or branding a product as "Breakfast Essentials"—while downplaying or obscuring the product's high sugar content. The Federal Trade Commission ("FTC") has likewise warned that nutrient claims are misleading if they highlight the presence of a beneficial nutrient while failing to disclose that the product contains significant amounts of ingredients that detract from its nutritional value. See 58 Fed. Reg. 2302, 2362 (Jan. 6, 1993) ("A claim that a food is 'healthy' or otherwise good for you may be misleading if it contains significant amounts of nutrients that increase the risk of disease.").

7.    Defendant's Product contains 12 grams of sugar per serving, which is 24% of the recommended daily value for added sugars, and its first two ingredients are water and glucose. Despite this, Defendant prominently emphasizes "10g protein" on the front label and markets the Product as "Breakfast Essentials." This branding suggests that the Product is a balanced, healthy substitute for breakfast, when in fact it delivers more sugar than protein and nearly one-quarter of the daily recommended sugar limit in a single serving. Under FDA's regulatory framework and FTC guidance, a product cannot lawfully or fairly be represented as a "nutritional drink" or an "essential" part of breakfast if its sugar content undermines its claimed nutritional benefits. Defendant's failure

2

to disclose the predominance of sugar, coupled with its misleading front-label claims, renders the Product labels unlawful under 21 C.F.R. §§ 101.9 and 101.13 and deceptive under parallel state consumer protection statutes.

8.      Although the Product's statement of "10g protein per serving" technically matches the NFP disclosure of protein and its %DV, Defendant's labeling is nevertheless unlawful and misleading. FDA regulations prohibit nutrient content claims that are presented in a manner that misleads consumers about the product's overall nutritional value. 21 C.F.R. § 101.13(i)(3). Defendant prominently highlights protein while downplaying the fact that the Product's first two ingredients are water and glucose and that it contains 12 grams of sugar per serving—24% of the daily recommended value.

9.      Defendant's emphasis on protein and its branding of the Product as "Breakfast Essentials" is likely to mislead reasonable consumers into believing that the Product is a balanced and healthful source of nutrition suitable as a substitute for breakfast. In reality, the Product delivers more sugar than protein, making it inconsistent with the reasonable consumer's understanding of what constitutes a "nutritional drink" or an "essential" part of breakfast. Consumers reasonably expect that a beverage marketed in this way will provide meaningful nutrition, not that it will derive its bulk composition from sugar.

10.      Defendant's unlawful and misleading labeling caused Plaintiff and members of the Class to pay a price premium for the Product. Courts have consistently found similar nutrient mislabeling actionable. In *Hadley v. Kellogg Sales Co.*, the court held that cereal labeling highlighting protein while concealing added sugar plausibly misled reasonable consumers and stated claims under the CLRA, UCL, and FAL. *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1089–90 (N.D. Cal. 2017). Defendant's conduct here is even more misleading because it emphasizes protein while failing to disclose that sugar is present in higher amounts than protein. As the court recognized in *Rausch v. Flatout, Inc*., 660 F. Supp. 3d 855 (N.D. Cal. 2023), failure to disclose the quality-adjusted percent daily value of protein renders otherwise accurate front-label protein claims misleading. This authority reinforces that Defendant's omissions about this Product here are deceptive under the CLRA, UCL, and FAL. Had they known the truth—that the Product was primarily water and sugar, delivering nearly one-quarter of the daily limit for added sugar in a single serving—they would not have purchased it, or would have paid significantly less.

3

**JURISDICTION AND VENUE**

11.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d) (Class Action Fairness Act) because this is a putative class action in which (a) the proposed class contains at least 100 members, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) at least one class member is a citizen of a state different from at least one defendant. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District and Defendants conduct business and sell the Product in this District. Assignment to the Fresno Division of the Eastern District of California is appropriate because the Product was purchased and sold within Kern County, which is within the Fresno Division.

**PARTIES**

12.     Plaintiff is, and at all times alleged in this Complaint was, an individual and a resident of Bakersfield, California. Plaintiff makes his permanent home in California and intends to remain in California.

13.     Defendant Nestle Health Science US Holdings, Inc. is a Delaware Corporation doing business in the United States and the state of California.

14.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 100, inclusive, are currently unknown to the Plaintiff, who therefore sues the Defendants by such fictitious names under the Code of Civil Procedure § 474.  Each of the Defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein.  Plaintiff will seek leave of court and/or amend this complaint to reflect the true names and capacities of the Defendants designated hereinafter as DOES 1 through 100 when such identities become known.  Any reference made to a named Defendant by specific name or otherwise, individually or plural, is also a reference to the actions or inactions of DOES 1 through 100, inclusive.

15.     At all times herein mentioned, Defendants, and each of them, were an agent or joint venturer of each of the other Defendants, and in doing the acts alleged herein, were acting with the course and scope of such agency.  Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-defendant, and/or retained the benefits of said wrongful acts.

Class Action Complaint

16.     Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiff and the Class, as alleged herein.  In taking action, as particularized herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

## SUBSTANTIVE ALLEGATIONS

17.     Defendant manufactures, distributes, markets, advertises, and sells the Product with a packaging that predominately, uniformly, and consistently emphasizes on the principal display panel that the Product provides "10g protein per serving" and that it is a "Breakfast Essential."

18.     The Product has been marketed throughout the Class Period as a "nutritional drink" suitable as a breakfast replacement. Defendant's labeling emphasizes the presence of protein but fails to disclose with equal prominence that the Product's first two ingredients are water and glucose and that it contains 12 grams of sugar per serving—representing 24% of the recommended daily value for added sugars.

19.     Defendant's representations that the Product is a "nutritional drink," "Breakfast Essential," and a meaningful source of protein were uniformly communicated to Plaintiff and every other purchaser of the Product in California. The same or substantially similar label has appeared on the Product throughout the entirety of the Class Period.

20.     The NFP on the Product does disclose protein and sugar values, but it fails to cure the misleading front-label impression created by Defendant's marketing. Defendant highlights "10g protein" in bold and prominent lettering while downplaying that the Product delivers more sugar than protein and nearly one-quarter of the daily limit for added sugars in a single serving.

21.     As described in detail below, Defendant's advertising and labeling of the Product as a "nutritional drink" and "Breakfast Essential" is unlawful, misleading, and intended to induce consumers to purchase the Product at a premium price, while failing to meet consumer expectations. The Product's labeling is unlawful because Defendant's nutrient content claims are presented in a manner that misleads consumers about the overall nutritional profile of the Product, in violation of 21 C.F.R. §§ 101.9 and 101.13. Federal regulations expressly prohibit labeling that highlights one

5

nutrient in a way that creates a false or misleading impression about a product's healthfulness. FDA regulations codify that nutrient content claims must not be made in a manner that is false or misleading in any respect. 21 C.F.R. § 101.13(i)(3). The FDA explained in promulgating this rule that such claims can mislead consumers who lack specialized nutritional knowledge. 56 Fed. Reg. 60421 (Nov. 27, 1991). Similarly, in *Hadley v. Kellogg Sales Co*., *supra*, the court emphasized that highlighting protein while obscuring the sugar profile could plausibly mislead reasonable consumers. Defendant's labeling here creates the same type of deception. Defendant's labeling practice falls squarely within this prohibition. See 21 C.F.R. § 101.13(i)(3).

22.    Defendant's failure to disclose the predominance of sugar, coupled with its prominent protein and "nutritional" claims, deceived and misled reasonable consumers into believing that the Product is a balanced, healthful source of breakfast nutrition; when in fact it is a sweetened beverage primarily made of water and sugar. Reasonable consumers would not expect a product marketed as "Breakfast Essentials" to contain more sugar than protein and thus Defendant's omissions and misrepresentations allowed it to charge a price premium. Comparable products marketed without protein claims, such as Carnation Instant Breakfast (regular formula), Yoo-Hoo Chocolate Drink, and Ovaltine Classic Malt are sold at lower prices per ounce. Defendant's deceptive marketing enabled it to command a higher price than these alternatives, creating an identifiable price premium directly attributable to the misrepresentations. The reasoning in *Hadley v. Kellogg Sales Co*. supports this conclusion. The court there held that whether consumers were deceived by nutrient claims paired with hidden sugar content was a factual question inappropriate for dismissal, but underscored the materiality of the misrepresentations. Additionally, consumer research shows that shoppers are particularly influenced by front-of-package protein claims. The FDA has acknowledged that consumers rely on these claims in making purchasing decisions. See FDA Commissioner Margaret Hamburg, Media Briefing (Oct. 2009) (noting that studies show consumers trust and rely on nutrition facts information to build a healthy diet). These facts demonstrate that the omissions alleged here are material. Had reasonable consumers been informed of the true composition of the Product—that it derives its bulk from water and sugar rather than protein—they would not have purchased it or would have paid significantly less.

**Consumer Demand for Protein**

23.    Many American consumers are increasingly health-conscious and seek foods and

beverages that support a balanced diet. Consumers routinely rely on nutrition labeling when making purchasing decisions. As the FDA has acknowledged, "[s]tudies show that consumers trust and believe the nutrition facts information and that many consumers use it to help them build a healthy diet." FDA Commissioner Margaret Hamburg, Media Briefing (Oct. 2009). Protein is one of the nutrients most sought after by consumers who want products that provide energy, satiety, and sustained nutrition.

24.    Protein is found throughout the body-in muscle, bone, skin, hair, and virtually every other body part or tissue. The health benefits of protein are well studied and wide ranging. Scientific studies have confirmed that protein can assist in weight loss, reduce blood pressure, reduce cholesterol, and control risk factors for cardiovascular diseases. The National Academy of Medicine recommends that adults get a minimum of .8 grams of protein for every kilogram of body weight per day, or just over 7 grams for every 20 pounds of body weight.[1] For a 140-pound person, that means about 50 grams of protein each day. For a 200-pound person, that means about 70 grams of protein each day. These recommendations are based on intake of high-quality proteins.

25.    The health benefits of protein are just as important, if not more important, for children. Children are in a relative state of constant growth and rely on protein as the building block of muscle, bone, skin, hair, and virtually every other body part or tissue. The National Academies of Science recommends the following amounts of daily intake of protein based on age group: 1-3 years old: 13 g of protein per day; 4-8 years old: 19 g of protein per day; 9-13 years old: 34 g of protein per day.[2]

26.    Recognizing this consumer demand, manufacturers often market foods and beverages by highlighting protein content. However, FDA and FTC regulations caution that nutrient content claims cannot be presented in a way that misleads consumers about the overall nutritional value of the product. 21 C.F.R. § 101.13(i)(3). The FTC has similarly stated that a claim emphasizing one positive nutrient may be misleading if the product simultaneously contains high levels of ingredients that undermine health, such as added sugars. See 58 Fed. Reg. 2302, 2362 (Jan. 6, 1993).

27.    Defendant exploits this consumer demand by prominently emphasizing that its

---

[1] National Academies of Medicine. Dietary Reference Intakes for Energy, Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids (Macronutrients).

[2] *Id.*

Class Action Complaint

Product contains "10g protein per serving" and by branding it as a "Breakfast Essential." While technically accurate, this representation is misleading because it creates the impression that the Product is a balanced source of nutrition suitable to replace breakfast. In truth, the Product contains more sugar than protein, with water and glucose as its first two ingredients and 12 grams of sugar per serving—24% of the daily recommended value for added sugars.

28.    Excessive sugar consumption is a serious public health concern. The FDA has identified added sugars as a nutrient of concern and now requires disclosure of both absolute amounts and %DV in the Nutrition Facts Panel. 21 C.F.R. § 101.9(c)(6)(iii). High sugar intake contributes to obesity, type 2 diabetes, and cardiovascular disease. A product marketed as "Breakfast Essentials" but delivering nearly one-quarter of a consumer's daily sugar limit in a single serving is not a nutritional breakfast substitute.

29.    By emphasizing protein while downplaying sugar, Defendant misleads reasonable consumers into believing that the Product's nutritional value derives primarily from protein and other essential nutrients. Courts have rejected similar labeling practices. In *Hadley v. Kellogg Sales Co.*, *supra*, the court held that concealing sugar content while touting protein plausibly misled reasonable consumers. The same logic applies with even greater force here. The FTC has likewise warned that emphasizing one nutrient while concealing others may mislead consumers. 58 Fed. Reg. 2302, 2362 (Jan. 6, 1993). Defendant's emphasis on protein while concealing high levels of sugar is precisely the kind of misrepresentation that reasonable consumers would find material, because it goes to the core health value of the product. In reality, sugar is the predominant nutrient, and its high concentration undermines the health benefits consumers reasonably expect from a "nutritional drink."

30.    Accordingly, Defendant's marketing of the Product as a protein-rich "Breakfast Essential" is deceptive and unlawful because it misrepresents the Product's true nutritional profile. Consumers seeking protein and balanced nutrition are instead sold a sweetened beverage dominated by sugar and water.

**Federal and State Regulations Governing Food Labeling**

31.    Identical federal and California laws regulate the content of labels on packaged food. The requirements of the Act, and its labeling regulations, including those set forth in 21 C.F.R. §§101, 102, were adopted by the California legislature in the Sherman Food Drug & Cosmetic Law

8

(the "Sherman Law"). California Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state.") The federal laws and regulations discussed below are applicable nationwide to all sales of packaged food products. Additionally, none of the California laws sought to be enforced here imposes different requirements on the labeling of packaged food for sale in the United States.

32.     The Act, 21 U.S.C.  § 343(a), and the Sherman Law, provides that a food is misbranded if "its labeling is false or misleading in any particular."

**The Product's Labeling Violates Federal and State Regulations**

33.     Federal law provides that a food is misbranded if "its labeling is false or misleading in any particular." 21 U.S.C. § 343(a); Cal. Health & Safety Code § 110660. A label is misleading if it fails to reveal material facts in light of representations made or suggested, or if it creates a false impression regarding the product's overall nutritional value. 21 C.F.R. § 1.21.

34.     Federal regulations further provide that nutrient content claims—such as a front-of-package statement highlighting "10g of Protein"—cannot be made "in a manner that is false or misleading in any respect." 21 C.F.R. § 101.13(i)(3). The FDA has cautioned that emphasizing one favorable nutrient while omitting or obscuring the presence of other significant nutrients, such as added sugars, can mislead reasonable consumers.

35.     Although Defendant included a statement of protein content and %DV in the NFP, Defendant's labeling is still unlawful and misleading because it highlights the protein content while concealing the fact that the predominant ingredients are water and sugar. The NFP confirms that the Product contains 12 grams of sugar per serving—24% of the daily value—yet this fact is not disclosed with equal prominence on the front label.

36.     By emphasizing "10g Protein" on the principal display panel, while failing to disclose that the Product's primary ingredients are water and glucose and that it contains a disproportionately high amount of added sugar, Defendant's labeling gives the false impression that the Product is a high-protein, nutritious "breakfast essential," when in fact it functions primarily as a sugary drink.

37.     Defendant's labeling practices thus violate 21 C.F.R. § 101.13(i), which prohibits nutrient content claims made in a misleading manner, and render the Product misbranded under both

9

the FDCA and California's Sherman Law.

38.    These misrepresentations were material to reasonable consumers, who purchased the Product believing it to be a healthy source of protein suitable as a breakfast replacement. In reality, the Product delivers more sugar than protein by weight, undermining its representation as a "nutritional drink" and causing consumers to pay a premium for a product they would not have otherwise purchased.

39.    Similarly, 21 C.F.R. § 101.13(i)(3) prohibits manufacturers from making a statement on the front of a product's package about the "amount or percentage of a nutrient," such as protein, if the statement is "false or misleading in any respect." If it is, then "it may not be made on the label." 21 C.F.R. § 101.13(b). This prohibition applies even if the same statement appears accurately within the NFP. 21 C.F.R. § 101.13(c).

40.    Under the Act, the term false has its usual meaning of "untruthful," while the term misleading is a term of art that covers labels that are technically true, but are likely to deceive consumers.

41.    The FDA explained in promulgating section 101.13(i) that the regulation was necessary "since many consumers have a limited knowledge and understanding of the amounts of nutrients that are recommended for daily consumption," which means that "a statement declaring that the product contained a specified amount of a nutrient could be misleading. By its very presence, such a statement could give consumers who were unfamiliar with the dietary recommendations the false impression that the product would assist them in maintaining healthy dietary practices relative to the amount of the nutrient consumed when it, in fact, would not." 56 Fed. Reg. 60421. The rules are different for amounts in the NFP and nutrient content claims because a voluntary nutrient declaration on the front panel "is viewed by the agency as an effort to market the food as a significant source of nutrients." 56 Fed. Reg. 60366.

42.    In addition to regulating the NFP, the FDA has promulgated a separate set of regulations that govern nutrient content claims on the front of a package. 21 C.F.R. § 101.13. A nutrient content claim is a claim that "expressly or implicitly characterizes the level of a nutrient." 21 C.F.R. § 101.13(b). "Express" nutrient content claims include any statement outside the Nutrition Facts Panel, about the level of a nutrient. 21 C.F.R. § 101.13(b)(1); 21 C.F.R. § 101.13(c). Stating information from the nutrition facts panel (such as grams protein per serving) elsewhere on the

package necessarily constitutes a nutrient content claim. 21 C.F.R. § 101.13(c). A manufacturer cannot make a nutrient content claim in the form of a "statement about the amount or percentage of a nutrient" if the statement is "false or misleading in any respect." 21 C.F.R. § 101.13(i)(3).

43.    While a required statement inside of the NFP escapes regulations reserved for nutrient content claims (21 C.F.R. § 101.13(c)), the identical statement outside of the NFP is still considered a nutrient content claim and is therefore subject to 21 C.F.R. § 101.13(i)(3). 21 C.F.R. § 101.13(c). Indeed, the Ninth Circuit has specifically held that "a requirement to state certain facts in the nutrition label is not a license to make that statement elsewhere on the product." *Reid v. Johnson & Johnson*, 780 F.3d 952, 960 (9th Cir. 2015). Thus, Defendant's quantitative protein claims on the front label are subject to analysis as a nutrient content claim and cannot be false or misleading in any manner.

44.    Here, Defendant's front label claim of "10g Protein" is misleading within the meaning of § 101.13(i)(3) because it suggests that the Product is a high-protein, nutritious beverage suitable as a "breakfast essential." In reality, the Product's first ingredients are water and glucose, and it contains 12 grams of sugar per serving—24% of the daily value—significantly more by weight than protein. By highlighting protein while omitting or downplaying the predominance of sugar, Defendant creates the false impression that the Product's nutritional value is derived primarily from protein.

45.    Defendant's labeling is therefore unlawful, misbranded, and violates the Sherman Law, Cal. Health & Safety Code § 110660, et seq. The protein content claim on the front label is a nutrient content claim made in violation of 21 C.F.R. § 101.13(i)(3) because it is misleading in context, notwithstanding the inclusion of the protein %DV in the NFP.

46.    Defendant's marketing, advertising, and sale of the Product violate the misbranding provisions of the Sherman Law (California Health & Safety Code § 110660, et. seq.), including but not limited to:

      a.    Section 110665 (a food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in 21 U.S.C. Sec. 343(q));

      b.    Section 110705 (a food is misbranded if words, statements and other information required by the Sherman Law to appear food labeling is either missing or not sufficiently conspicuous);

c.  Section 110760, which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded;

d.  Section 110765, which makes it unlawful for any person to misbrand any food; and

e.  Section 110770, which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food.

47.     Defendant's marketing, advertising, and sale of the Product also violate the false advertising provisions of the Sherman Law (California Health & Safety Code § 110390, et. seq.), including, but not limited to:

a.  Section 110390, which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product;

b.  Section 110395, which makes it unlawful to manufacture, sell, deliver, hold or offer to sell any falsely or misleadingly advertised food; and

c.  Sections 110398 and 110400, which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely or misleadingly advertised.

48.     Defendant has violated the Act, and the standards set by FDA regulations, including but not limited to 21 C.F.R. § 101.13(i)(3), (b), (n), as well as 21 C.F.R. § 1.21 which have been incorporated by reference in the Sherman Law, by failing to include on the Product labels the nutritional information required by law.

49.     A reasonable consumer would expect that the Product delivers the nutritional value suggested on its labels and that those labels comply with the standards and policies of the FDA and the State of California. When Defendant highlights "10g Protein" on the front label, a reasonable consumer believes the Product is a genuine source of dietary protein appropriate as a "breakfast essential." Consumers do not expect that the Product's protein is overshadowed by higher concentrations of water and sugar, or that the Product derives most of its calories from added sugar rather than from protein.

50.    Consumers lack the ability to independently verify the truthfulness of Defendant's labeling claims at the point of sale. The Nutrition Facts Panel discloses protein grams and %DV, but it does not reveal the predominance of sugar relative to protein or the fact that the first two ingredients are water and glucose. Reasonable consumers reviewing the front label reasonably assume that "10g Protein" means the Product's nutritional value is based primarily on protein, not sugar. Average consumers do not have the specialized knowledge to analyze ingredient concentrations, calculate nutrient ratios, or evaluate whether a product marketed as a "nutritional drink" is in fact sugar-dense. Defendant's failure to disclose this material information leaves consumers with no reason to question its representations. *Hadley v. Kellogg Sales Co.*, *supra*, confirms that omissions regarding sugar content, when paired with emphasized protein claims, are likely to mislead reasonable consumers. Thus, Defendant's labels fall within this deceptive pattern. California courts have long held that material misrepresentations and omissions that would cause a reasonable consumer to make a different purchasing decision satisfy the standards for deception under the CLRA, UCL, and FAL. See *Colgan v. Leatherman Tool Group, Inc*., 135 Cal. App. 4th 663, 682 (2006). Here, the premium pricing obtained by Defendant confirms materiality.

51.    Defendant knows and intends that consumers rely on front-label nutrient content claims, such as "10g Protein," when deciding whether to purchase a product. By prominently placing these claims on the front of the Product, Defendant leverages consumer interest in protein to drive sales and to justify charging a price premium, despite the fact that the Product's nutritional profile is dominated by added sugars.

**Defendant Misleadingly Markets the Product to Increase Profits and Gain a Competitive Edge**

52.    In making unlawful, false, misleading, and deceptive representations, Defendant distinguishes the Product from its competitors' products. Defendant knew and intended that consumers would purchase, and pay a premium for, products labeled with protein claims, even though the Product's primary ingredients are glucose and water. By using this branding and marketing strategy, Defendant is stating that the Product is superior to, better than, and more nutritious and healthful than other products that either do not make protein claims or that more accurately reflect their nutritional composition.

///

**Defendant Intends to Continue to Market the Product as Nutritional Drink Despite Its Predominant Sugar and Water Content**

53.    Because consumers pay a price premium for products marketed as protein-rich or positioned as "nutritional," Defendant capitalizes on this demand by labeling and advertising the Product as containing 10 grams of protein per serving, while downplaying the fact that its primary ingredients are glucose and water. This marketing strategy creates the misleading impression that the Product derives its nutritional value primarily from protein, when in reality it delivers a high concentration of added sugars.

54.    Defendant engaged in this deceptive labeling and marketing to further its private interests by: (i) increasing sales of the Product while diverting purchases away from competitors that do not misrepresent the balance of sugar and protein in their products; and (ii) charging a price premium by presenting the Product as a healthy, protein-based breakfast option when, in truth, it is dominated by sugar.

55.    Defendant knows that consumer demand for protein-containing products has grown significantly, particularly for products marketed as meal replacements or breakfast alternatives. Defendant also knows that consumers reasonably expect that such products will deliver meaningful nutritional benefits rather than high levels of sugar. By continuing to emphasize protein while concealing the Product's high sugar content as its predominant ingredient, Defendant has every incentive to persist in its misleading practices.

56.    For example, one market analysis revealed that between 2013-2017, product launches with a protein claim grew 31%.[3]

57.    To capitalize on the growing market, Defendant continues to launch new product lines and flavors to diversify their portfolio to maintain their competitive edge. Moreover, Defendant has continued to replicate its misrepresentations on new products. It is therefore likely that Defendant will continue to unlawfully and/or misleadingly advertise the Product and perpetuate the misrepresentations regarding the protein in the Product.

**PLAINTIFF'S EXPERIENCES**

58.    Plaintiff specifically recalls purchasing the Product on multiple occasions between

---

[3] https://www.bakeryandsnacks.com/Article/2018/11/26/10-key-snack-trends-towatch?utm_source=copyright&utm_medium=OnSite&utm_campaign=copyright

14

approximately Spring 2021 and Fall 2023, including at local grocery retailers in Bakersfield and through Amazon. The labeling and advertising were materially uniform during this period, so the same misrepresentations were present at each purchase.

59.    Plaintiff made each of his purchases after reading and relying on the truthfulness of Defendant's front labels that promised the Product provided 10 grams of protein per serving. He believed the truth of each representation, i.e., that the product would actually provide the specific amount of protein claimed on the front labels in a form that human bodies could utilize, and that the Product constituted a meaningful nutritional component of a breakfast. In fact, the Product's formulation is dominated by water and sugar, and sugar is present at a higher concentration than protein. Plaintiff relied on the Product's protein claims in deciding to purchase it. Had Defendant not made the front-label protein claims or had disclosed the excessive sugar content alongside the protein claim, Plaintiff would not have been drawn to the Product and would not have purchased it, or at minimum, would have paid less.

60.    Moreover, had Defendant adequately disclosed the Product's nutritional profile, including that sugar was present in a higher concentration than protein, Plaintiff would not have purchased the Product or would have paid less. Plaintiff regularly reviews the NFP when purchasing products for the first time, including the % DV for protein when provided, and uses that information to compare similar products. Plaintiff reviewed the NFP before purchasing the Product, and reasonably relied on the disclosed grams of protein as an indication of nutritional value. Because the Product failed to disclose the high sugar content prominently, Plaintiff was misled into believing the Product was a healthful breakfast alternative.

61.    When purchasing the Product, Plaintiff was seeking a product that would provide at least 10 grams of digestible protein per serving as part of a balanced breakfast. Had Plaintiff known that the Product's protein content was accompanied by 12 grams of sugar, or 24% of the daily recommended value, which undermines its healthfulness, she would not have purchased the Product, or at minimum would have paid less. Plaintiff relied on the front-label protein claim as an accurate representation of the Product's nutritional value. Because Defendant failed to disclose the high sugar content and the relative insignificance of protein in the overall formulation, Plaintiff had no reason to know the Product was not a suitable nutritional substitute for breakfast. Plaintiff justifiably relied on the uniform front-label claim of '10g Protein' across each purchase, and no variation in labeling

existed that could have altered this reliance. The Nutrition Facts Panel disclosure did not cure the deception because it failed to reveal the predominance of sugar relative to protein.

62.     Plaintiff continues to seek products that provide at least 10 grams of protein per serving and would purchase Defendant's products if the products were reformulated to deliver usable protein or if the labels were revised to provide truthful, non-misleading information. Plaintiff regularly shops for protein and breakfast nutritional products online and in stores, including Defendant's offerings. Because the Product's formulation can change over time and the labels do not accurately convey digestible protein content relative to sugar content, Plaintiff cannot rely on Defendant's labels when making informed purchasing decisions. Without an injunction prohibiting Defendant from misrepresenting protein content or concealing high sugar levels, Plaintiff will be forced to re-test or reanalyze each product before purchase, and cannot make informed comparisons between Defendant's products and those of other manufacturers based on nutritional content or price.

63.     Plaintiff and members of the Class have been economically damaged by their purchase of the Product because the advertising for the Product was and is untrue and/or misleading under state law and the product is misbranded; therefore, the Product is worth less than what Plaintiff and members of the Class paid for them and/or Plaintiff and members of the Class did not receive what they reasonably intended to receive.

64.     This injury is concrete because the Product, marketed as a protein-based breakfast essential, was in fact dominated by sugar and water, and thus had a market value materially lower than its purchase price. Plaintiff and Class members paid more than they otherwise would have, or would have purchased alternative products, but for Defendant's deceptive labeling.

## CLASS ACTION ALLEGATIONS

65.     Plaintiff brings this action under Code of Civil Procedure §382, as an individual and on behalf of all other persons similarly situated.  The putative class that Class Representative seeks to represent is composed of: All persons who purchased the Product in the State of California (hereinafter the "Class").

66.     Excluded from the Class are the natural persons who are directors, and officers, of the Defendants.  Class Representative expressly disclaims that she is seeking a class-wide recovery for personal injuries attributable to Defendants' conduct.

16

Class Action Complaint

67.    The members of the Class are so numerous that joinder of all members is impracticable. The exact number of class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery.

68.    Plaintiff's claims are typical of the claims of the members of the Class. All Class members were deceived by Defendants' false advertisement. Likewise, Defendants' misconduct impacted all Class members in the same manner.

69.    Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests are aligned with Class members' interests because they were subject to the same false advertising committed by Defendants regarding the Product. Plaintiff has also retained competent counsel with significant experience litigating complex class actions.

70.    Defendants have acted in a manner that applies generally to Plaintiff and all Class members. Each Class member has been similarly impacted by Defendants' false advertising of the Product.

71.    Common questions of law and fact predominate over questions affecting individual Class members. The common questions of fact and law include:

(a)    Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Product is unlawful and/or misleading;

(b)    Whether Defendant's actions violate Federal and California laws invoked herein;

(c)    Whether labeling the Product with a protein claim causes the Product to command a price premium in the market;

(d)    Whether Defendant's failure to disclose that the Product's protein is accompanied by a higher concentration of sugar, and that the Product is dominated by water and sugar rather than protein, is likely to mislead or deceive a reasonable consumer into believing the Product is a healthful breakfast alternative providing meaningful protein;

(e)    Whether Defendant's front-label representation of "10 grams of protein per serving," without context about the high sugar content and overall nutritional composition, constitutes a material factor that would influence a reasonable consumer's decision to purchase the Product;

17

(f)     Whether Defendant's engaged in the behavior knowingly, recklessly, or negligently;

72.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable. The individual prosecution of separate actions by individuals would lead to repetitive adjudication of common questions of fact and law and create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants. There will be no difficulty in the management of this action as a class action.

73.    Proper and sufficient notice of this action may be provided to the Class members through direct mail.

74.    Moreover, the Class members' individual damages are insufficient to justify the cost of litigation, so that in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go unremedied without certification of the Class. Absent certification of this action as a class action, Class Representative and the members of the Class will continue to be deceived by Defendants' false advertising of the Product.

## CAUSES OF ACTION

75.    Plaintiff does not plead, and hereby disclaims, causes of action under the FDCA and regulations promulgated thereunder by the FDA. Plaintiff relies on the FDCA and FDA regulations only to the extent such laws and regulations have been separately enacted as state law or regulation or provide a predicate basis of liability under the state and common laws cited in the following causes of action.

### FIRST CAUSE OF ACTION
**Violation of the Consumers Legal Remedies Act**
**[Civil Code § 1750 *et seq.*]**
(Against All Defendants)

76.    The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

77.    Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which resulted, in the sale or lease of goods or services to consumers.

78.    Plaintiff and other Class members are "consumers" as that term is defined by the

18

CLRA in California Civil Code § 1761(d).

79.    The Product that Plaintiff (and other similarly situated Class members) purchased from Defendant were "goods" within the meaning of California Civil Code § 1761(a).

80.    Defendant's acts, practices and omissions, set forth in this Complaint, led customers to falsely believe that the Product contained high quality protein sufficient to serve as a nutritious breakfast, when in fact the Product is dominated by water and sugar, with sugar present at a higher concentration than protein. By engaging in the actions, representations and conduct set forth in this Complaint, Defendant has violated, and continues to violate, § 1770(a)(2), § 1770(a)(5), § 1770(a)(7), § 1770(a)(8), and § 1770(a)(9) of the CLRA. In violation of California Civil Code § 1770(a)(2), Defendant's acts and practices constitute improper representations regarding the source, sponsorship, approval, or certification of the goods it sold. In violation of California Civil Code § 1770(a)(5), Defendant's acts and practices constitute improper representations that the goods it sells have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have. In violation of California Civil Code § 1770(a)(7), Defendant's acts, practices, and omissions constitute improper representations that the goods it sells are of a particular standard, quality, or grade, when they are of another. In violation of California Civil Code § 1770(a)(8), Defendant deceptively marketed the Product by prominently highlighting its "10 grams of protein" while concealing that the Product is dominated by water and contains a higher concentration of sugar than protein, thereby creating the false impression that it is a healthful and nutritionally superior breakfast or protein beverage. In violation of California Civil Code § 1770(a)(9), Defendant has advertised goods or services with intent not to sell them as advertised. Finally, Defendant had a duty to ensure that the front-label protein claim accurately reflected the Product's nutritional value. By emphasizing "10 grams of protein" while concealing that the Product is dominated by water and contains a higher concentration of sugar than protein, Defendant failed to meet this duty. 21 C.F.R. § 101.9(c)(7)(i)-(iii).

81.    Plaintiff requests that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendant is not restrained from engaging in these types of practices in the future, Plaintiff and the other members of the Class will continue to suffer harm. Plaintiff and those similarly situated have no adequate remedy at law to stop Defendant's continuing practices.

19

82.    On or about July 29, 2025, Defendant was provided with notice and a demand to correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. Despite receiving the aforementioned notice and demand, Defendant failed to do so in that, among other things, it failed to identify consumers, notify them of their right to correction, repair, replacement or other remedy, and/or to provide that remedy. Accordingly, Plaintiff seeks, pursuant to California Civil Code § 1780(a)(3), as an individual and on behalf of those similarly situated Class members, compensatory damages, punitive damages and restitution of any ill-gotten gains due to Defendant's acts and practices.

83.    Plaintiff also requests that this Court award costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

## SECOND CAUSE OF ACTION
### Violation of the False Advertising Law
### [Business And Professions Code Section 17500, Et Seq.]
(Against all Defendants)

84.    Plaintiff and the Class hereby incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further alleges as follows.

85.    Beginning at an exact date unknown to Plaintiff, but within four (4) years preceding the filing of the Complaint, Defendant made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of the Product.

86.    Defendant made representations and omissions that led reasonable consumers to believe the Product contained a meaningful amount of protein per serving and was suitable as a nutritional breakfast or to meet daily protein needs. While the Nutrition Facts Panel disclosed the % Daily Value for protein, the Product's front-label claim of "10 grams of protein" emphasized protein content while concealing that the Product is dominated by water and sugar, with sugar present at a higher concentration than protein. This labeling misled consumers regarding the Product's true nutritional value and appropriateness as a breakfast essential or nutritional drink.

87.    Plaintiff and those similarly situated relied to their detriment on Defendant's false, misleading and deceptive advertising and marketing practices, including each of the misrepresentations and omissions set forth above. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation, refraining from purchasing Defendant's Product or paying less for them.

20

88.    Defendant's acts and omissions are likely to deceive the general public.

89.    Defendant engaged in these false, misleading and deceptive advertising and marketing practices to increase their profits. Accordingly, Defendant has engaged in false advertising, as defined and prohibited by section 17500, et seq. of the California Business and Professions Code.

90.    The aforementioned practices, which Defendant used, and continues to use, to their significant financial gain, also constitutes unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

91.    As a direct and proximate result of such actions, Plaintiff and the other members have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

92.    Plaintiff seeks, as an individual and on behalf of those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendant from Plaintiff, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiff makes the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in the other causes of action, in the event that such causes of action will not succeed. Plaintiff and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy at law, if the Court requires them to show class wide reliance and materiality beyond the objective reasonable consumer standard applied under the FAL, because Plaintiff may not be able to establish each Class member's individualized understanding of Defendant's misleading representations as described in this Complaint, but the FAL does not require individualize proof of deception or injury by absent Class members. See, e.g., *Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012) ("restitutionary relief under the UCL and FAL 'is available without individualized proof of deception, reliance, and injury.'"). In addition, Plaintiff and the Class may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiff is unable to demonstrate the requisite mens rea

(intent, reckless, and/or negligence), because the FAL imposes no such mens rea requirement and liability exists even if Defendant acted in good faith.

93.     Plaintiff seeks, as an individual and on behalf of those similarly situated, a declaration that the above-described practices constitute false, misleading and deceptive advertising.

94.     Plaintiff seeks, as an individual and on behalf of those similarly situated, an injunction to prohibit Defendant from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which it is not entitled. Plaintiff, those similarly situated, and/or other consumers have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

### THIRD CAUSE OF ACTION
**(Common Law Fraud, Deceit, and/or Misrepresentation)**
(Against All Defendants)

95.     Plaintiff repeats and realleges every allegation set forth in the preceding paragraphs.

96.     Defendant fraudulently and deceptively represented to Plaintiff that the Product provides a meaningful amount of protein per serving suitable for meeting dietary needs, while in reality the Product is dominated by water and sugar, with sugar present at a higher concentration than protein, and thus does not provide the nutritional benefits implied by the front-label "10 grams of protein" claim.

97.     Although the Nutrition Facts Panel disclosed the % Daily Value for protein, Defendant failed to provide adequate context to convey the Product's true nutritional value, including that the high sugar content overwhelms the protein content, misleading consumers about the Product's suitability as a breakfast essential or nutritional drink.

98.     These misrepresentations and omissions were known exclusively to, and actively concealed by, Defendant, and were not reasonably known to Plaintiff. At the time the statements were made, they were material to a reasonable consumer's purchasing decision. Defendant knew or should have known the Product's composition, including that it is dominated by water and sugar

22

with sugar present in a higher concentration than protein, and that the Product did not provide the nutritional benefits implied by the front-label "10 grams of protein" claim. Defendant's misrepresentations and omissions concerned material facts essential to Plaintiff's evaluation of whether to purchase the Product. By misleading Plaintiff and similarly situated consumers and failing to provide accurate information, Defendant breached their duty to consumers and unjustly gained financially from their misconduct.

99.    Plaintiff and those similarly situated relied to their detriment on Defendant's misrepresentations and fraudulent omissions. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation: (i) declining to purchase the Product, (ii) purchasing less of it, or (iii) paying less for the Product.

100.    By and through such fraud, deceit, misrepresentations and/or omissions, Defendant intends to induce Plaintiff and those similarly situated to alter their position to their detriment. Specifically, Defendant fraudulently and deceptively induced Plaintiff and those similarly situated to, without limitation, purchase the Product.

101.    Plaintiff and those similarly situated justifiably and reasonably relied on Defendant's misrepresentations and omissions, and, accordingly, were damaged by Defendant.

102.    As a direct and proximate result of Defendant's misrepresentations and/or omissions, Plaintiff and those similarly situated have suffered damages, including, without limitation, the amount they paid for the Product.

103.    Defendant's conduct as described herein was willful and malicious and was designed to maximize Defendant's profits even though Defendant knew that it would cause loss and harm to Plaintiff and those similarly situated.

## FOURTH CAUSE OF ACTION
### (Unlawful, unfair, and fraudulent trade practices violation of Bus. & Prof. Code §17200, *et seq.*)
(Against All Defendants)

104.    Plaintiff repeats and realleges every allegation set forth in the preceding paragraphs.

105.    Within four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Defendant has engaged, and continues to engage, in unlawful, unfair, and fraudulent trade

practices in California by engaging in the unlawful, unfair, and fraudulent business practices outlined in this Complaint.

106. In particular, Defendant has engaged, and continues to engage, in unlawful practices by, without limitation, violating the following state and federal laws: (i) the CLRA as described herein; (ii) the FAL as described herein; (iii) the advertising provisions of the Sherman Law (Article 3), including without limitation, California Health & Safety Code §§ 110390, 110395, 110398 and 110400; (iv) the misbranded food provisions of the Sherman Law (Article 6), including without limitation, California Health & Safety Code §§ 110660, 110665, 110705, 110760, 110765, and 110770; and (v) and federal laws regulating the advertising and branding of food in 21 U.S.C. § 343(a), et seq. and FDA regulations, including but not limited to 21 C.F.R. §§ 101.9(c)(7), 101.13(i)(3), and 101.21, which are incorporated into the Sherman Law (California Health & Safety Code § 110100(a), 110380, and 110505).

107. In particular, Defendant has engaged, and continues to engage, in unfair and fraudulent practices by, without limitation, the following: (i) deceptively emphasizing a "10 grams of protein" claim on the front of the package in a manner that misleads reasonable consumers regarding the Product's nutritional value, including the fact that it is dominated by water and contains a higher concentration of sugar than protein, in violation of 21 C.F.R. §§ 101.9(c)(7), 101.13(i)(3), and 101.21, as incorporated into California's Sherman Law; (ii) failing to provide adequate context on the front label and in marketing to accurately convey the Product's nutritional value relative to sugar content, despite disclosing the % Daily Value for protein in the Nutrition Facts Panel; and (iii) misleading reasonable consumers regarding the amount of usable protein the Product provides and its suitability as a breakfast essential or nutritional drink, thereby constituting unfair, deceptive, and fraudulent practices under state and federal law.

108. Plaintiff and those similarly situated relied to their detriment on Defendant's unlawful, unfair, and fraudulent business practices. Had Plaintiff and those similarly situated been adequately informed and not deceived by Defendant, they would have acted differently by, without limitation: (i) declining to purchase the Product, (ii) purchasing less of the Product, or (iii) paying less for the Product.

109. Defendant's acts and omissions are likely to deceive the general public.

Class Action Complaint

110.    Defendant engaged in these deceptive and unlawful practices to increase its profits. Accordingly, Defendant has engaged in unlawful trade practices, as defined and prohibited by section 17200, et seq. of the California Business and Professions Code.

111.    The aforementioned practices, which Defendant has used to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

112.    As a direct and proximate result of such actions, Plaintiff and the other  Class members have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiff and the Class members lost the amount they paid for the Products.

113.    As a direct and proximate result of such actions, Defendant has enjoyed, and continues to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

114.    Plaintiff seeks, as an individual and on behalf of those similarly situated, equitable relief, including the restitution for the premium and/or full price that the Class Members paid to Defendant as a result of Defendant's conduct. Plaintiff and the Class lack an adequate remedy at law to obtain such relief with respect to their "unlawfulness" claims in this UCL cause of action because the California Sherman Law does not provide a direct cause of action, so Plaintiff and the Class must allege those violations as predicate acts under the UCL to obtain relief.

115.    Plaintiff also seeks equitable relief, including restitution, with respect to the UCL "fraudulent" prong claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiff makes the following allegations in this Paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action do not succeed. Plaintiff and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy of law, if the Court requires them to show class wide reliance and materiality beyond the objective reasonable consumer standard applied under the UCL, because Plaintiff may not be able to establish each Class member's individualized understanding of Defendant's misleading representations as described in this Complaint, but the UCL does not require individualized proof of deception or injury by absent class members. See,

25

e.g., *Stearns v Ticketmaster*, 655 F.3d 1013, 1020, 1023-25 (distinguishing, for purposes of CLRA claim, among class members for whom website representations may have been materially deficient, but requiring certification of UCL claim for entire Subclass). In addition, Plaintiff and the Class may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiff is unable to demonstrate the requisite mens rea (intent, reckless, and/or negligence), because the UCL imposes no such mens rea requirement and liability exists even if Defendant acted in good faith.

116.    Plaintiff seeks, as an individual and on behalf of those similarly situated, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

117.    Plaintiff seeks, as an individual and on behalf of those similarly situated, an injunction to prohibit Defendant from continuing to engage in the deceptive and/or unlawful trade practices complained of herein. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which it was not entitled. Plaintiff and those similarly situated have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

### **FIFTH CAUSE OF ACTION**
#### **(Unjust Enrichment)**
(Against All Defendants)

118.    Plaintiff repeats and realleges every allegation set forth in the preceding paragraphs.

119.    Plaintiff and members of the Class conferred a benefit on Defendant by purchasing the Product.

120.    Defendant has been unjustly enriched in retaining the revenues from Plaintiff and Class members' purchases of the Product, which retention is unjust and inequitable, because Defendant falsely represented that the Product contained meaningful amounts of protein per serving, while concealing that the Product is dominated by water and sugar, and that the nutritional value of the protein provided is limited relative to the high sugar content.

26

Class Action Complaint

121.    Because Defendant's retention of the non-gratuitous benefit conferred on them by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members for its unjust enrichment, as ordered by the Court. Plaintiff and those similarly situated have no adequate remedy at law to obtain this restitution.

122.    Plaintiff, therefore, seeks an order requiring Defendant to make restitution to the Class.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class respectfully request that the Court enter judgment against Defendants as follows:

A. A determination that this action is a proper class action under Code of Civil Procedure §382, certifying Plaintiff as Class representative, and appointing the undersigned counsel as Class counsel;

B. An order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C. An award of compensatory damages in an amount to be determined at trial, except for those causes of action where compensatory damages are not legally available;

D. An award of statutory damages in an amount to be determined at trial, except for those causes of action where statutory damages are not legally available;

E. An award of punitive damages in an amount to be determined at trial, except for those causes of action where punitive damages are not legally available;

F. An award of treble damages, except for those causes of action where treble damages are not legally available;

G. An award of restitution in an amount to be determined at trial;

H. An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

I. For reasonable attorneys' fees and the costs of suit incurred; and

J. For such further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff and the Class demand a trial by jury on all issues so triable as a matter of right.

Class Action Complaint

**POTTER HANDY LLP**

*/s/ James M. Treglio*

Dated: October 2, 2025                    By: _____

                        Mark D. Potter, Esq.
                        James M. Treglio, Esq.
                        Cara Townsend, Esq.
                        Isabel Rose Masanque, Esq.
                        Bree Durso, Esq.
Attorneys for the Plaintiff and the Class

Class Action Complaint