**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ERIC TESTORI, an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NESTLÉ HEALTH SCIENCE US HOLDINGS, INC., a Delaware Corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 1:25-cv-01318-JLT-CDB<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT<br><br>(Doc. 14.) |

Testori filed the instant putative class action against Nestle Health Science. (Docs. 1, 14.) Plaintiff claims that Defendant engaged in misleading or deceptive advertisements in connection with the labeling and sale of the Carnation Breakfast Essentials Nutritional Drink, in violation of various California state law. (*See generally* Doc. 14.) For the reasons set forth below, the Court **GRANTS** Defendant's motions to dismiss.

## I.   INTRODUCTION

### A.  Factual Background

Eric Testori is a resident of Bakersfield, California, and Nestle Health Science is a Delaware Corporation. (Doc. 14 at ¶¶ 12–13.) Defendant manufactures, distributes, markets, advertises, and sells the Product at issue in this case—the Carnation Breakfast Essentials Nutritional Drink Classic French Vanilla ("Product"). (*Id*. at ¶¶ 1, 17.) Plaintiff brings this putative class action against Defendant, alleging that the latter engaged in "unlawful and deceptive practices" by labeling the Product "as a 'nutritional drink' and highlight[ing] its 10g of

1

protein per serving," while "fail[ing] to disclose with equal prominence that the Product's first two ingredients are water and . . . 11 grams of sugar per serving." (*Id.* at ¶¶ 1, 18.) A picture of the front label of the Product, which contains the allegedly misleading/deceptive statements, is included below.



(Doc. 18-3 at 2.) According to Plaintiff, "Defendant's failure to disclose the predominance of sugar, coupled with its prominent protein and 'nutritional' claims, deceived and misled reasonable consumers into believing that the Product is a balanced, healthful source of breakfast nutrition; when in fact it is a sweetened beverage primarily made of water and sugar. Reasonable consumers would not expect a product marketed as 'Breakfast Essentials' to contain more sugar than protein and thus Defendant's omissions and misrepresentations allowed it to charge a price premium." (Doc. 14 at ¶ 22.)

**B. Procedural History**

Plaintiff filed the instant action on October 6, 2025, and then filed the First Amended

Complaint ("FAC") on December 8, 2025. (Docs. 1, 14.) Plaintiff's FAC raises the following four causes of action: (1) California Consumer Legal Remedies Act ("CLRA"), (Doc. 14 at ¶¶ 76–83); (2) California false advertising law ("FAL"), (*id*. at ¶¶ 84–94); (3) common law fraud, deceit, or misrepresentation, (*id*. at ¶¶ 95–103); (4) California unfair competition law ("UCL"), (*id*. at ¶¶ 104–17); and (5) unjust enrichment, (*id*. at ¶¶ 118–22).

On December 19, 2025, Defendant filed a motion to dismiss the FAC for failure to state a claim upon which relief can be granted. (Doc. 18.) The matter is fully briefed and ripe for review. (Pl.'s Opp'n, Doc. 21; Def.'s Reply, Doc. 22.) As indicated, (Doc. 23), the Court took the matter under submission without oral argument.

## II.    PRELIMINARY MATTERS

### A.  Judicial Notice

The Court may consider a document if "the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). In addition, the Court may take judicial notice of facts "not subject to reasonable dispute . . . [that] can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "In the context of a motion to dismiss claims based upon allegedly misleading product labels, the Court may take judicial notice of the images depicting the product labels at issue, without having to convert the motion to dismiss into a motion for summary judgment." *Garza v. Spectrum Brands Pet LLC*, 760 F. Supp. 3d 1039, 1046 (E.D. Cal. 2024). Here, Plaintiff extensively discussed the front label throughout the FAC. (*See generally* Doc. 14.) The Court therefore takes judicial notice of pictures of the Product's packaging.

### B.  Legal Standard

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This

plausibility inquiry is a "context-specific task that requires [this Court] to draw on its judicial experience and common sense," *id*. at 679, and "'draw all reasonable inferences in favor of the nonmoving party[,]'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014)). "Conclusory allegations and unreasonable inferences," however, "do not provide [] a basis" for determining whether a plaintiff has plausibly stated a claim for relief. *Coronavirus Reporter v. Apple, Inc.*, 85 F.4th 948, 954 (9th Cir. 2023) (citation omitted).

## III.   ANALYSIS

### A. Preemption

Before turning to the details of instant action, the Court finds it helpful to provide a summary of the federal regulatory framework:

> The FDA regulates three types of claims relevant in this case: express nutrient content claims, implied nutrient content claims, and health claims. *See Chacanaca v. Quaker Oats*, Co., 752 F. Supp. 2d 1111, 1117 (N.D. Cal. 2010) (citing 21 U.S.C. § 343(q), (r) and 21 C.F.R. §§ 101.13, 101.14).
>
> An express nutrient claim is a statement about the level or range of the nutrient in the food product, like "low sodium" or "contains 100 calories." *See* 21 C.F.R. § 101.13(b)(1). Food product labels may include an express nutrient claim provided that it "does not in any way implicitly characterize the level of the nutrient in the food and it is not false or misleading in any respect (e.g., '100 calories' or '5 grams of fat'), in which case no disclaimer is required." 21 C.F.R. § 101.13(i)(3).
>
> An implied nutrient content claim "describes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (e.g., 'high in oat bran')." 21 C.F.R. § 101.13(b)(2)(i)-(ii); *Ackerman*, 2010 WL 2925955, at *3 (providing the example "as much fiber as an apple"). An implied nutrient content claim might also make "a 'general nutritional claim,' (a subcategory of an implied nutrient claim) consisting of an express or implied claim that the *nutrient content* of a food may help consumers maintain healthy dietary practices." *Ackerman*, 2010 WL 2925955, at *3 (emphasis added).
>
> . . .
>
> A health claim is "any claim that expressly or by implication characterizes the relationship of any substance to a disease or health-related condition." 21 C.F.R. § 101.14(a)(1). An express health claim are those "references, written statements (e.g., a brand name including a term such as 'heart'), symbols (e.g., a heart symbol), or

vignettes" that expressly characterize the relationship. *Id.* An implied health claim are "those statements, symbols, vignettes, or other forms of communication that suggest, within the context in which they are presented, that a relationship exists between the presence or level of a substance in the food and a disease or health-related condition." *Id.*

Statements that do not involve the above health or nutrient content claims (or nutritional labeling information under section 343(q)) are not preempted by the FDA. *See id.* at 1118 (discussing 21 U.S.C. § 343(q) and (r)); *see also* 21 C.F.R. § 101.65 ("Certain label statements about the nature of a product are not nutrient content claims unless such statements are made in a context that would make them an implied nutrient content claim under § 101.13(b)(2)."). As the FDA explained:

> When a term such as "Wholesome" or "Nutritious" is used in a context that does not render it an implied claim (e.g., "Nutritious foods, prepared fresh daily" or "Made with wholesome ingredients"), it is not subject to the claims requirements. On the other hand, FDA may consider the term to be used in a nutritional context if it appears in association with an explicit or implicit claim or statement about a nutrient. In statements such as "Nutritious, contains 3 grams of fiber," "Best choice, contains 200 mg sodium," or "Good for you, contains 5 grams of fat," the terms are implied nutrient content claims and the foods bearing the claims must meet the requirements for a claim defined by FDA for the nutrient that is the subject of the claim.

> . . .

> Based on the FDA's express decision to not recognize sugar as a disqualifying nutrient, various district courts have now adopted the finding that "any claim under state law solely premised on the notion that [a product's] high sugar content made its health or implied nutrient content claims misleading is preempted." *Ackerman*, 2010 WL 2925955, at *8; *Krommenhock*, 255 F. Supp. 3d at 956; *see Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1077–78 (N.D. Cal. 2017) (rejecting "Plaintiff's theory that health claims or implied nutrient content claims are misleading because of a certain amount of added sugar in a product" because to hold otherwise "would essentially 'ascribe disqualifying status' to added sugar"). This Court agrees, and likewise adopts this finding.

*McMorrow v. Mondelez Int'l, Inc.*, No. 17-CV-02327-BAS-JLB, 2018 WL 3956022, at *5–7

(S.D. Cal. Aug. 17, 2018) (alterations adopted).

5

Here, the "nutritional drink" statement is right above four additional statements stating: "10g protein," "21 vitamins + minerals," "3x vitamin vs. milk," and "2x calcium vs. Greek Yogurt." (Doc. 18-3 at 2.) This is like the product in *Krommenhock v. Post Foods, LLC*, where the word "healthy" was "'followed immediately' by a specific listing of nutrients present in the product." 255 F. Supp. 3d 938, 956–57 (N.D. Cal. 2017). Like *Bates*, the context of the packaging "implies that the reason that the drink is a nutrition drink is that it contains the nutrients . . . listed directly below that phrase on the bottle." *Bates v. Abbott Lab'ys*, 727 F. Supp. 3d 194, 220 (N.D.N.Y. 2024), *aff'd*, No. 24-919-CV, 2025 WL 65668 (2d Cir. Jan. 10, 2025).

Crucially, the Ninth Circuit has already addressed a very similar situation. In *Clark v. Perfect Bar, LLC*, the district court dismissed a case where the plaintiffs argued that the packaging on some protein bars "led them to believe that the bars would be 'healthy' when, in supposed point of fact, the added sugar rendered them unhealthy or, in the alternative, less healthy from what they otherwise had believed." No. C 18-06006 WHA, 2018 WL 7048788, at *1 (N.D. Cal. Dec. 21, 2018), *aff'd*, 816 F. App'x 141 (9th Cir. 2020). Judge Alsup of the Northern District of California found the plaintiffs' claim to be "untenable" and explained:

> The actual ingredients were fully disclosed. Reasonable purchasers could decide for themselves how healthy or not the sugar content would be. No consumer, on notice of the actual ingredients described on the packing including honey and sugar, could reasonably overestimate the health benefits of the bar merely because the packaging elsewhere refers to it as a health bar and describes its recipe as having been handed down from a health-nut parent. The honey/sugar content was properly disclosed — that is the end of it — period.

*Id*. On appeal, the Ninth Circuit issued a terse memorandum opinion on an alternative ground—dismissing the plaintiffs' state law claims, including the UCL, FAL, and CLRA claims, as preempted by federal law. *Clark v. Perfect Bar, LLC*, 816 F. App'x 141, 143 (9th Cir. 2020) (Mem.). The Ninth Circuit explained in no ambiguous terms: "Allowing a claim of misbranding under California law based on misleading sugar level content would 'indirectly establish' a sugar labeling requirement 'that is not identical to the federal requirements,' a result foreclosed by our precedent." *Id*. (citing *Hawkins v. Kroger Co.*, 906 F.3d 763, 770 (9th Cir. 2018)) (footnote omitted); *see also id*. ("To the extent Appellants' claims advance the notion that Perfect Bar made

an improper health claim due to added sugar levels in the bar, those claims are not viable." (citation omitted)).

Clark is almost on all fours here. Notably, Plaintiff expressly states that the essence of his "claim is that Defendant's use of that statement – when combined with other front-label representations such as 'Breakfast Essentials' and 'Nutritional Drink' – creates a misleading net impression that the Product is nutritionally balanced and suitable for breakfast consumption, notwithstanding its high added sugar content." (Doc. 21 at 9.) Indeed, the FAC and Plaintiff's brief in opposition are filled with contentions related to "health" and "nutrition." (See, e.g., Doc. 21 at 5 ("A manufacturer that chooses to emphasize *healthful* qualities assumes a duty not to omit facts that would render those representations misleading." (citations omitted) (emphasis added)), 13 (allegedly "misleading nutritional message" because of "11 grams of added sugar"); Doc. 14 at ¶¶ 28 ("A product marketed as 'Breakfast Essentials' but delivering nearly one-quarter of a consumer's daily sugar limit in a single serving is not a nutritional breakfast substitute."), 54 ("[P]resenting the Product as a *healthy*, protein-based breakfast option when, in truth, it is dominated by sugar." (emphasis added)), 60 ("Plaintiff was misled into believing the Product was a *healthful* breakfast alternative." (emphasis added)).) Because Plaintiff's entire case turns on allegedly misleading "health" and "nutritional" messages conveyed by the Product, the Court finds all state law claims preempted by federal laws and regulations.

## B. Misrepresentation

Even setting aside the issue of preemption, Plaintiff nonetheless fails to plausibly state a claim upon which relief can be granted. Plaintiff alleges that the Product's packaging is misleading or deceptive because the "front label markets the Product as a 'Breakfast Essential,' a 'Nutritional Drink,' and a meaningful source of protein, while omitting facts that materially undermine that message — namely, that the Product delivers 11 grams of added sugar per serving, or 22% of the daily recommended value." (See Doc. 21 at 11; see also id. at 13 ("[Plaintiff] alleges that Defendant's prominent emphasis on protein, combined with breakfast-orientated messaging, conveys a misleading nutritional impression given the Product's high added sugar content.").) Defendant, on the other hand, argues that a "reasonable consumer"

7

would not have been deceived. (*See generally* Doc. 18-1 at 14–20.)

For claims arising under California's CLRA, UCL, and FAL, the plaintiff must show that reasonable consumers are likely to be deceived by the label. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). The reasonable consumer test requires the plaintiff to "show that members of the public are likely to be deceived." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quotations omitted). This standard also applies to common law fraud, intentional misrepresentation, and negligent misrepresentation claims. *See Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (explaining that common law fraud requires showing that the label would mislead a reasonable person); *Girard v. Toyota Motor Sales, U.S.A., Inc.*, 316 Fed. App'x. 561, 562 (9th Cir. 2008) (holding that the "justifiable reliance" element of negligent misrepresentation equates to the "reasonable consumer" standard).

"Whether a reasonable consumer would be deceived by a product label is generally a question of fact not amenable to determination on a motion to dismiss." *Girard*, 316 Fed. App'x at 562. However, the court may determine, as a matter of law, that the alleged violations of the CLRA, UCL, and FAL are simply not plausible. *See, e.g.*, *Chong v. Nestle Water N. Am., Inc.*, No. 20-56373, 2021 WL 4938128, at *1 (9th Cir. Oct. 22, 2021) ("[T]his Court may conclude on the pleadings that no reasonable consumer would be misled by any of the product labels at issue in this suit."); *Werbel ex rel. v. Pepsico, Inc.*, No. 09-cv-04456-SBA, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (holding that a reasonable consumer would not be deceived into believing that "Crunch Berries" cereal derived significant nutritional value from fruit). "Dismissal is appropriate when 'the advertisement itself [makes] it impossible for the plaintiff to prove that a reasonable consumer [is] likely to be deceived.'" *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 778 (9th Cir. 2024) (quoting *Williams*, 552 F.3d at 938–39.) The reasonable consumer test therefore "requires more than a mere possibility that [the defendant's] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Ebner*, 838 F.3d at 965 (quoting *Lavie v. Proctor & Gamble Co.*¸105 Cal. App. 4th 496, 508 (Cal. Ct. App. 2003)). Rather, the reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances,

8

could be misled." *Id.*

The Ninth Circuit has articulated a specific approach for evaluating packaging for consumer deception claims at the pleadings stage. *See Whiteside*, 108 F.4th at 778–82. That is, "a plaintiff *must* plausibly allege that the front label would be *unambiguously deceptive* to an ordinary consumer, such that the consumer would feel no need to look at the back label" before reasonably concluding that the front label is making a particular representation. *Id*. at 780 (emphases added). "[T]he front label must be unambiguously deceptive for a defendant to be precluded from insisting that the back label be considered with the front label" at the pleading stage. *McGinity v. Proctor & Gamble Co.*, 69 F.4th 1093, 1098 (9th Cir. 2023) (emphasis added).

In *Williams*, the Ninth Circuit addressed a product which contained a statement stating that it "was made with 'fruit juice and other all natural ingredients.'" 552 F.3d at 939. It is a statement that "could easily be interpreted by consumers as a claim that all the ingredients in the product were natural, which appear[ed] to be false." *Id*. The Ninth Circuit explained that a manufacturer cannot "mislead consumers" on the front label "and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains *more detailed* information about the product that *confirms* other representations on the packaging." *Id*. (emphases added). The Second Circuit then quoted that part of the opinion *verbatim* and made it a part of that circuit's jurisprudence. *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018).

The Second Circuit's decision in *Bates* is particularly helpful towards the resolution of the instant case. *Bates v. Abbott Lab'ys*, No. 24-919-CV, 2025 WL 65668 (2d Cir. Jan. 10, 2025). There, a consumer alleges that the "health and wellness statements on the labels affixed to … nutrition shakes and drinks" advertising the drinks as "healthy and nutritious" "are false and misleading because the high amount of added sugar in the products is harmful to an individual's health." *Id*. at *1–2 (cleaned up). The district court dismissed the state law claims at the motion-to-dismiss stage, holding, *inter alia*, that the plaintiff failed to state a plausible claim that the labels on the products were false or misleading. *Id*. at *1. The Second Circuit affirmed the district court's judgment.

9

The Second Circuit reasoned that there is no allegedly deceptive advertising under New York state law[1] when "the amount of sugar was disclosed on the federally-mandated Nutrition Facts Panel." *Id*. The court acknowledged that consumers should not be expected to ignore the misleading representation on the front label and discover the truth on the back label. *Id*. (citing and quoting *Mantikas*, 910 F.3d at 637). However, "the challenged labeling statements at issue … [were not] affirmatively inaccurate, or contradictory to the Nutrition Facts Panel, because none of the challenged statements reference the sugar content of the product[] … [or] even mention[] sugar." *Id*. (citations omitted). The court further explained that even if "the general statements about health and nutrition on the labeling . . . implicitly create[d] some ambiguity about the sugar content of those products, any such ambiguity is cured by the accurate reporting of the sugar content on the Nutrition Facts Panel." *Id*. at *3.

Similarly, the Product at issue here is a "nutritional drink" which contains many "breakfast essential[]" nutrients. (Doc. 18-3 at 2.) Specifically, the front label states that it contains "10g protein," "21 vitamins + minerals," "3x vitamin vs. milk," and "2x calcium vs. Greek Yogurt." (*Id*.) In addition to the Second Circuit's persuasive analysis in *Bates*, the Court finds that it is not precluded from considering the back label—which explicitly discloses the amount of added sugar—for two extra reasons.

First, the Product here does not make any assertion about overall "health" or "balanced/healthy diet." (*See generally* Doc. 18-3.)[2] Though added sugar may turn an otherwise

---

[1] The Court finds no material distinction between the New York standard and the California standard for purposes of this motion. *Compare Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) ("In view of the allegations here, the false or misleading advertising and unfair business practices claim must be evaluated from the vantage of a reasonable consumer." (cleaned up)), *with Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (N.Y. 2000) ("Whether a representation or an omission, the deceptive practice must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" (citation omitted)). The Ninth Circuit appears to imply as such. *See Clark*, 816 F. App'x at 143 n.1 (9th Cir. 2020).

[2] The Court finds several district court opinions to be distinguishable on this basis. *See, e.g.*, *McMorrow*, 2018 WL 3956022, at *1 ("We worked closely with nutritionists to design belVita Breakfast Biscuits, wholesome grains, and part of a balanced breakfast." (citation and quotation marks omitted)); *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1060 (N.D. Cal. 2017) (statements affirmatively claiming that the products promote "healthy" body and lifestyle, as well as "overall well-being"); *Krommenhock*, 255 F. Supp. 3d at 946–47 (involving statements of "healthy" cereal and affirmatively downplaying the products' sugar content). In any event, those cases predate the Ninth Circuit's most recent clarifications (e.g., *McGinity* and *Whiteside*) regarding whether—and when—it is permissible for a

healthy product into an unhealthy one, the Product at issue here does not become less—or cease to be—"nutritional" due to the added sugar. As such, Plaintiff has failed to "plausibly allege that the front label is literally false . . .." *Robles v. GOJO Indus., Inc.*, No. 22-55627, 2023 WL 4946601, at *1 (9th Cir. Aug. 3, 2023) (citations omitted). Moreover, the front label suggests that the Product is "breakfast essential" because it contains "10g protein," "21 vitamins + minerals," "3x vitamin vs. milk," and "2x calcium vs. Greek Yogurt." Contrary to Plaintiff's arguments, the Court finds no plausible indication that Defendant is "unambiguously" representing that the Product is "nutritionally balanced" on the front label. (*See* Doc. 21 at 9.) Plaintiff has not plausibly alleged that an ordinary consumer "would *feel no need to look* at the back label" before jumping to the conclusion, *see Whiteside*, 108 F.4th at 780 (emphasis added), that "breakfast essential" means a nutritionally "balanced" drink which does not have 11 grams of added sugar, (*see* Doc. 21 at 7).[3]

Second, and relatedly, the front label does not mention or suggest anything about the amount of added sugar. The Court is not precluded from considering the back label where, as here, the back "label does not contradict other representations or inferences" on the front label. *See Ebner v. Fresh, Inc.*, 838 F.3d 958, 966 (9th Cir. 2016). And, when considering the front label and the back label together, a reasonable consumer would not have been misled into believing that the Product has low amounts of added sugar.[4]

Finally, "when 'ambiguity' on the front of a label 'can be resolved by reference to the back label,' a reasonable consumer would not be deceived." *Kim v. Bluetriton Brands, Inc.*, No.

_____

district court to consider the content on the back label.

[3] Modern advertisements frequently use phrases like, "You need this," "You have to use this," or "This is essential for your health." A reasonable consumer would understand the need to view such statements with a grain of salt, and not take an expansive, strenuous, and atextual interpretation of them, as Plaintiff seems to urge.

[4] The FAC seems to suggest that because "the Product is dominated by water and sugar," it does not provide the nutritional benefits implied by the front-label '10 grams of protein' claim." (Doc. 14 at ¶ 96.) The Court "does not understand the logic of this contention—Plaintiff has not offered any plausible explanation as to how the benefits associated with 10g of protein may change based on what else may be present in the drink. Stated differently, Plaintiff does not plausibly explain how "the amount of usable protein [in] the Product" changes due to the amount of added sugar. (*Id*. at ¶ 107.)

11

22-56063, 2024 WL 243343, at *1 (9th Cir. Jan. 23, 2024) (quoting *McGinity*, 69 F.4th at 1098–99). And because the Court has concluded above that the back label should be considered, which discloses the amount of added sugar in the Product, Plaintiff's the deception-by-omission theory of liability necessarily fails. (*See* Doc. 18-1 at 23.)

For all these reasons, the Court **GRANTS** Defendant's motion and **DISMISSES** the first through fourth causes of action.

### C.  Unjust Enrichment

Under the fifth cause of action, Plaintiff alleges that "Defendant has been unjustly enriched in retaining the revenues from Plaintiff and Class members' purchases of the Product, which retention is unjust and inequitable, because Defendant falsely represented that the Product contained meaningful amounts of protein per serving, while concealing that the Product is dominated by water and sugar, and that the nutritional value of the protein provided is limited relative to the high sugar content." (Doc. 14 at ¶ 120.) Plaintiff therefore contends that Defendant should be required to pay restitution to Plaintiff and the Class members for its unjust enrichment. (*Id*. at ¶ 121.)

However, as Defendant points out, Plaintiff has explicitly conceded that unjust enrichment is not a standalone cause of action in the state of California. (Doc. 22 at 14; *see also* Doc. 21 at 18.) And "a restitution claim based on fraud or consumer protection claims must nonetheless be dismissed if the plaintiff fails to sufficiently plead an actionable misrepresentation or omission." *In re Apple Processor Litig.*, No. 18-CV-00147-EJD, 2022 WL 2064975, at *12 (N.D. Cal. June 8, 2022) (citing *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1120 (N.D. Cal. 2016)), *aff'd*, No. 22-16164, 2023 WL 5950622 (9th Cir. Sept. 13, 2023). The Court therefore **DISMISSES** Plaintiff's unjust enrichment claim for failure to plausibly raise a claim of misrepresentation.

### IV.   LEAVE TO AMEND

"The [C]ourt considers five factors in assessing the propriety of leave to amend—bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colleges*, 655 F.3d

984, 995 (9th Cir. 2011) (citing *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004)). "Based on the undisputed nature of the packaging, it appears that amendment could not remedy the absence of a consumer deception claim. Thus, the motion is granted with prejudice and without leave to amend." *Garza*, 760 F. Supp. 3d at 1051.

### V.   CONCLUSION

Based upon the foregoing, the Court **ORDERS**:

(1) The First Amended Complaint is **DISMISSED WITH PREJUDICE**.

(2) The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated:   **May 11, 2026**

UNITED STATES DISTRICT JUDGE